The opinion below is hereby signed. Dated: February 6, 2006.

_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                              )
                                   )
AQUANETTA ANDERSON,                )    Case No. 05-02389
                                   )    (Chapter 13)
            Debtor.                )

SUPPLEMENTAL OPINION REGARDING ANNULMENT OF AUTOMATIC STAY

This supplements the court's oral decisions of January 5, 2006, and January 20, 2006, regarding the Motion Seeking Annulment of Automatic Stay and Co-Debtor Stay or for a Determination That No Stay Exists filed by GRP Realty, LLC ("GRP"). Claiming that through a foreclosure sale it owns the residence occupied by the debtor and her husband, GRP has been attempting to evict them pursuant to an action in the Superior Court of the District of Columbia. By its motion GRP seeks to keep in place a ruling in its favor by the Superior Court and a writ of possession, which were both issued after Mrs. Anderson filed the petition commencing this bankruptcy case.

I

The co-debtor stay of 11 U.S.C. § 1301 does not apply in this case. GRP is not attempting to enforce a claim against the debtor for which a co-debtor is also liable. Instead, GRP is attempting to evict Mrs. Anderson and her husband, Ronald Anderson, from real property on the basis of GRP's asserted ownership of the real property. That is not a "claim" as defined in 11 U.S.C. § 101(5) and thus § 1301 does not apply. Even if the co-debtor stay did apply, the grounds for annulling the automatic stay of 11 U.S.C. § 1301 would justify annulling the co-debtor stay. See In re Allen, 300 B.R. 105, 122 (Bankr. D.D.C. 2003), aff'd sub nom. Allen v. Wells Fargo Bank Minn., N.A., 2005 WL 3370432 (D.D.C. Dec. 13, 2005).

II

One factor weighing in favor of annulling the automatic stay is Mrs. Anderson's bad faith. See In re Soares, 107 F.3d 969, 977 (1st Cir. 1997) ("[D]ebtors who act in bad faith may create situations that are ripe for retroactive relief."); In re Kissinger, 72 F.3d 107, 109 (9th Cir. 1995); Sonnax Indus., Inc. v. Tri Component Products Corp., 907 F.2d 1280, 1286 (2d Cir. 1990).

A.

Mrs. Anderson was ineligible to be a debtor in this case because she filed the petition commencing the case without having

2

"received from an approved nonprofit budget and credit counseling agency described in section 111(a) an individual or group briefing . . . that outlined the opportunities for available credit counseling and assisted such individual in performing a related budget analysis" as required by 11 U.S.C. § 109(h)(1). Cynthia A. Niklas, the chapter 13 trustee, moved to dismiss the case based on the debtor's ineligibility to file the case. In an effort to defeat the trustee's motion to dismiss, Mrs. Anderson submitted false evidence purporting to establish that she had obtained credit counseling and a budget analysis prior to the commencement of the case.

### B.

In addition, it is apparent that Mrs. Anderson's motivation in filing her bankruptcy petition was not to advance a legitimate bankruptcy purpose, but instead was to defeat the rights that GRP was pursuing in the eviction proceeding against her and Mr. Anderson in the Superior Court of the District of Columbia. She filed her bankruptcy petition on the same day as--and sometime after--the hearing on GRP's motion for summary judgment in the Superior Court. That was too close in time to be just a coincidence, particularly given the Andersons' long history of delaying GRP in obtaining possession of the property, including through Mr. Anderson's prior bankruptcy filing. Significantly, the Andersons had already unsuccessfully opposed GRP's motion

3

filed in Mr. Anderson's case to obtain relief from the automatic stay to permit GRP to pursue the eviction proceeding in the Superior Court.  This court determined in Mr. Anderson's bankruptcy case that there was no bankruptcy reason to stay the Superior Court litigation from going forward to adjudicate GRP's asserted right to (and the Andersons' defenses against) eviction. Nothing about Mrs. Anderson's new case has presented any reason to keep in place a stay of the eviction proceeding in the Superior Court.  This bankruptcy case could not enhance Mrs. Anderson's non-bankruptcy law defenses to eviction.[1]  What she gained was the benefit of the automatic stay (when it served no legitimate bankruptcy purpose) and another opportunity to ask this court to address her non-bankruptcy law defenses to eviction, which this court had already refused to address in Mr. Anderson's case and which, upon the filing of Mrs. Anderson's new case, were much closer to resolution in the Superior Court than they had been when relief from the stay was granted in Mr.

---

[1] GRP's rights arose from a foreclosure sale, not pursuant to a lease, so there was no right to cure defaults under a lease under 11 U.S.C. § 365.  The Andersons' defenses to eviction challenge either the foreclosure sale, which preceded the filing of Mr. Anderson's case, or the propriety of GRP's being found to have rights pursuant to that sale, defenses that arise under non-bankruptcy law and that are not enhanced by the intervention of bankruptcy.

4

Anderson's case.[2]

C.

A third instance of bad faith occurred when Mrs. Anderson presented false testimony at the initial hearing on GRP's motion to annul the automatic stay that she had notified GRP's counsel of the pendency of the bankruptcy case prior to the issuance of the writ of attachment.  In fact, Anderson gave no such notice to the counsel who was representing GRP in the Superior Court litigation, and that counsel had no notice or actual knowledge of this bankruptcy case prior to the issuance of the writ.

III

Seldom if ever will a court annul the automatic stay when a creditor has actual knowledge of a bankruptcy case and undertakes an act that it knows violates the automatic stay despite such knowledge, but that situation is not present here.  Although the Bankruptcy Noticing Center of the United States Courts mailed notice of the bankruptcy case to GRP in New York on November 12,

---

[2] The court notes that there may have been yet a third bankruptcy filing to frustrate GRP's eviction remedy.  On January 22, 2006--two days after the court issued its oral decision ruling in GRP's favor on January 20, 2006--Rosemary McCray filed a petition in this court commencing a case under chapter 13 of the Bankruptcy Code, Case No. 06-00017.  On her petition, Ms. McCray indicated that she is a "co-owner of property and occupant" at the address that is the Andersons' residence, and GRP has filed a motion for relief from the automatic stay in that case.  The court has not taken that new filing into account in deciding this matter as it was obviously not part of the evidentiary record.

5

2005, Mrs. Anderson did not point to that notice at the initial hearing of GRP's motion, with the result that after that hearing the issue left for resolution at the final hearing was whether counsel for GRP was given notice of the bankruptcy case prior to the issuance of the writ.

Even if the issues are expanded to address the notice mailed to GRP itself, that notice to GRP did not mention Ronald Anderson, who was the only obligor on the debt that had given rise to the foreclosure sale, and who had been the only owner of record of the real property when it was sold at foreclosure.[3] Further, the notice did not make mention of the pending eviction proceeding.  Mrs. Anderson has failed to introduce evidence to demonstrate, and has failed to explain, how GRP could reasonably be expected to be able to ascertain that Mrs. Anderson was the subject of an eviction proceeding arising from a foreclosure sale enforcing an obligation of Ronald Anderson.

In any event, even if GRP had some way of ascertaining what connection, if any, it had to Mrs. Anderson, it would not have received the notice mailed on November 12, 2005, in sufficient time to have been reasonably expected to ascertain that

---

[3] Not until the hearing on GRP's motion for annulment did Mrs. Anderson produce an unrecorded instrument in which Mr. Anderson purportedly conveyed to her an interest in the real property.  Mrs. Anderson had no dower interest in the real property when it was sold at foreclosure.  See D.C. Code § 19-102; In re Lawson, 333 B.R. 105 (Bankr. D.D.C. 2005).

6

litigation brought by it was pending in Washington, D.C., regarding Mrs. Anderson and to notify its counsel in Leesburg, Virginia, of the notice in sufficient time for counsel to take steps to file papers to withdraw the request for issuance of the writ prior to its issuance on November 16, 2005.  Mrs. Anderson was well aware that GRP's counsel in Leesburg, Virginia, was handling the Superior Court eviction proceeding and ought to have taken steps to assure that such counsel received notice, but failed to do so, and she has only herself to blame for his not learning of the case in time for him to withdraw the request for issuance of the writ.

V

Even if Mrs. Anderson had been eligible to be a debtor in this bankruptcy case, no bankruptcy purpose would be served by staying GRP from pursuing eviction in the Superior Court.  Accordingly, it would make no sense to keep the automatic stay or the co-debtor stay in place on a prospective basis as to the writ even if this case were not being dismissed as barred by § 109(h).

Annulling the automatic stay retroactively is a form of relief not as readily granted as prospective relief from the stay.  Soares, 107 F.3d at 977 ("strict standard" must be applied to a motion to annul the stay).  However, because no meaningful bankruptcy purpose would be served by failing to annul the stay (and by thus rendering the writ of possession void as in

violation of the stay), and because GRP's counsel was not aware that this bankruptcy case was filed prior to the issuance of the writ, it is appropriate to annul the stay to keep the writ in place.  "Bankruptcy courts have the power to annul an automatic stay retroactively for cause pursuant to 11 U.S.C. § 362(d)(1) in order to rehabilitate stay violations."  Bunch v. Hoffinger Indus. (In re Hoffinger Indus.), 329 F.3d 948, 951-52 (8th Cir. 2003) (citing In re Siciliano, 13 F.3d 748, 751 (3d Cir. 1994)). The circumstances here fully justify annulling the stays.  See Mutual Benefit Life Insur. Co. v. Pinetree, Ltd. (In re Pinetree, Ltd.), 876 F.2d 34 (5th Cir. 1989) (mortgagee proceeded to foreclose not knowing that the debtor had filed a bankruptcy case, in circumstances in which a lifting of the automatic stay would have been appropriate, and the court of appeals--noting that "[f]urther redundancy and delay would needlessly result"-- directed the bankruptcy court to annul the automatic stay); Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.), 749 F.2d 670, 675-76 (11th Cir.1984) (stay annulled where petition was filed in bad faith and the mortgagee had reason to believe that the property was not part of the bankruptcy estate).

Although motions for annulment of the automatic stay must be addressed on a case by case basis, such that the court should eschew adopting a set of factors that must be present for annulment to be granted, it is useful to note that relevant

factors to consider in addressing annulment of the automatic stay include:

> (1) if the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay, (2) if the debtor has acted in bad faith, (3) if there was equity in the property of the estate, (4) if the property was necessary for an effective reorganization, (5) if grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation, (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor, and (7) if the creditor has detrimentally changed its position on the basis of the action taken.

In re Stockwell, 262 B.R. 275, 281 (Bankr. D. Vt. 2001) (citing In re Lett, 238 B.R. 167, 195 (Bankr. W.D. Mo. 1999)).  Other than the seventh factor, which is not present, the factors weigh here in favor of annulling the automatic stay: GRP was not on adequate notice of the bankruptcy case; Mrs. Anderson has acted in bad faith; GRP claims a right to eviction based only on the Superior Court's upholding its claim of ownership, and that ownership (the predicate to GRP's pursuing eviction) necessarily will mean that there is no equity for the bankruptcy estate in the property and  that the property is not estate property necessary for an effective reorganization; relief from the stay would have been granted had a motion for such relief had been heard before the writ issued (and, indeed a similar motion had already been granted in Mr. Anderson's case); and requiring GRP to incur attorney's fees anew in pursuing issuance of a new writ would impose an unnecessary expense on GRP.  The evidence weighs

clearly and heavily in favor of annulling the automatic stay.

VI

Mrs. Anderson was not eligible to be a debtor in this case as she had not complied with 11 U.S.C. § 109(h).  Because annulment of any stay that arose in this case is appropriate, the court need not decide whether under In re Hollberg, 208 B.R. 755 (Bankr. D.D.C. 1997) (case barred by 11 U.S.C. § 109(g) did not give rise to automatic stay),[4] Mrs. Anderson's ineligibility to be a debtor under 11 U.S.C. § 109(h) resulted in no stay having arisen in this case, or whether instead Hollberg and similar decisions are no longer good law in light of 11 U.S.C. § 362(b)(21), a provision which the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") added to the Bankruptcy Code (effective as to cases filed on or after October 17, 2005), and which arguably treats a barred case as

---

[4] Accord, In re McKay, 268 B.R. 908, 911 (Bankr. W.D. Va. 2001); In re Walker, 171 B.R. 197, 202 (Bankr. E.D. Pa. 1994); In re Prud'homme, 161 B.R. 747, 751 (Bankr. E.D.N.Y. 1993); Miller v. First Fed. Sav. and Loan Ass'n of Monessen (In re Miller), 143 B.R. 815, 820 (Bankr. W.D. Pa. 1992).  Cf. Casse v. Key Bank Nat'l Ass'n (In re Casse), 198 F.3d 327 (2d Cir. 1999) (two-year bar against refiling barred automatic stay from arising: alternative holding to annulling stay if one did arise); Rowe v. Ocwen Fed. Bank & Trust (In re Rowe), 220 B.R. 591 (E.D. Tex. 1997) (similar alternative holding), aff'd, 178 F.3d 1290 (5th Cir. 1999).  But see In re Flores, 291 B.R. 44 (Bankr. S.D.N.Y. 2003).

nevertheless giving rise to an automatic stay.[5]

However, if necessary to prevent an abuse of the bankruptcy system, the court has the inherent authority to preclude any future petition filed by or against Mrs. Anderson or Mr. Anderson (who is a party to this contest)[6] from giving rise to an automatic stay or co-debtor stay.[7]  The circumstances present a

---

[5]  Section 362(b)(21) excepts from the automatic stay of § 362(a):

> any act to enforce any lien against or security interest in real property--
>         (A) if the debtor is ineligible under section 109(g) to be a debtor in a case under this title; or
>         (B) if the case under this title was filed in violation of a bankruptcy court order in a prior case under this title prohibiting the debtor from being a debtor in another case under this title[.]

[6]  Both Mr. and Mrs. Anderson filed the opposition to GRP's motion, and Mr. Anderson's case is still pending in this court.

[7]  It is uncertain whether any exceptions in § 362(b) to the automatic stay of § 362(a) would apply in favor of GRP in such a future case: GRP does not appear to have a lease with the Andersons (see § 362(b)(22)) and it arguably is not proceeding to enforce a lien on real property (see § 362(b)(20) and (21)) but instead an eviction based on its ownership of the property. Nothing in the BAPCPA suggests that Congress intended to eliminate a bankruptcy court's power under 11 U.S.C. § 105 to issue, when necessary and appropriate, an order precluding an automatic stay from arising in a subsequent case.  That it effectively codified such protective orders in 11 U.S.C. § 362(b)(20) and (21) in some instances in the case of real estate lien foreclosures does not demonstrate that it intended to deprive a bankruptcy judge of crafting such protective orders when warranted in other circumstances.  If anything, BAPCPA suggests an intention that bankruptcy cases not be used as an instrument of abuse.

case of abuse in which such relief is appropriate.  The court will direct that any bankruptcy petition filed by or against Mr. or Mrs. Anderson within the next 365 days shall not give rise to an automatic stay or co-debtor stay against GRP's eviction efforts.

## VII

An order follows.

[Signed and dated above.]

Copies to: James E. Clarke; Steve Kushnir; debtor; Ronald Anderson (same address as debtor); Office of U.S. Trustee; Cynthia A. Niklas, chapter 13 trustee.